## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **RUQAYYAH BUTLER,** | ) |
| ***On behalf of L.B.,*** | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )   **CIVIL ACTION NO. 1:22-00460-N** |
| | ) |
| **MARTIN O'MALLEY,** | ) |
| ***Commissioner of Social Security,***[1] | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Ruqayyah Butler, on behalf of L.B., a minor, brought this action under

42 U.S.C. § 1383(c)(3) seeking judicial review of a final decision of the Defendant

Commissioner of Social Security denying L.B.'s application for supplemental security

income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.*[2]

---

[1]During the pendency of this action, Martin O'Malley was confirmed as Commissioner of Social Security (*see* https://www.kiplinger.com/retirement/social-security/omalley-to-be-social-securitys-new-commissioner (last visited 3/26/2024), and began his term of service on December 20, 2023 (*see* https://www.ssa.gov/history/commissioners.html (last visited 3/26/2024)). Accordingly, O'Malley is automatically substituted for former Acting Commissioner Kilolo Kijakazi as the party defendant in this action under Federal Rule of Civil Procedure 25(d), and this change does not affect the pendency of this action. See 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office."). The Clerk of Court is **DIRECTED** to update the title of this case on the docket accordingly.

[2] "Title XVI of the Act provides for the payment of disability benefits to indigent persons under the Supplemental Security Income (SSI) program." *Bowen v. Yuckert*, 482 U.S. 137, 140, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987) (citing 42 U.S.C. § 1382(a) (1982 ed., Supp. III)).

Upon due consideration of the parties' briefs (Docs. 20, 25, 28) and those portions of the certified transcript of the administrative record (Doc. 13) relevant to the issues raised, and with the benefit of oral argument, the Court finds that the Commissioner's final decision is due to be **AFFIRMED**.[3]

## I.    *Procedural Background*

In 2018, an SSI application was filed on L.B.'s behalf with the Social Security Administration ("SSA"); on August 31, 2018, L.B. was found to be disabled, and thus entitled to SSI, as of July 17, 2018. (*See* Doc. 13, PageID.122-129). However, on February 27, 2020, L.B., who was 1 year old at the time, was determined to be no longer disabled as of February 1, 2020. (*See id.*, PageID.130-141). After this determination was upheld on reconsideration by a state agency hearing officer, L.B. requested, and on January 12, 2022, received, a hearing before an Administrative Law Judge ("ALJ") with the Social Security Administration's Office of Hearings Operations. On April 27, 2022, the ALJ issued an unfavorable decision finding that L.B. was no longer disabled under the Social Security Act and was therefore not entitled to further benefits. (*See* Doc. 13, PageID.60-81).

The Commissioner's decision on L.B.'s continuing-disability review became final when the Appeals Council for the SSA's Office of Appellate Operations denied L.B.'s request for review of the ALJ's unfavorable decision on October 28, 2022. (*Id.*,

---

[3] With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (*See* Docs. 18, 19).

PageID.54-59). Butler, on behalf of L.B., subsequently brought this action under § 1383(c)(3) for judicial review of the Commissioner's final decision. *See* 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing [for SSI benefits] shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."); 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow."); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council.").

## II.   *Standards of Review*

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation omitted).

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South*, *LLC* v. *Roswell*, 574 U.S. [293], [301], 135 S. Ct. 808, 815, 190 L. Ed. 2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197,

229, 59 S. Ct. 206, 83 L. Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence … is "more than a mere scintilla." *Ibid.*; see, *e.g.*, [*Richardson v.*] *Perales*, 402 U.S. [389,] 401, 91 S. Ct. 1420[, 28 L. Ed. 2d 842 (1971)] (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S. Ct. 206. See *Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L. Ed. 2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

*Biestek v. Berryhill*, 587 U.S. --, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019).

In reviewing the Commissioner's factual findings, a court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Winschel*, 631 F.3d at 1178 (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))). " 'Even if the evidence preponderates against the [Commissioner]'s factual findings, [the Court] must affirm if the decision reached is supported by substantial evidence.' " *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

Put another way, "[u]nder the substantial evidence standard, we cannot look at the evidence presented to [an administrative agency] to determine if interpretations of the evidence other than that made by the [agency] are possible. Rather, we review the evidence that was presented to determine if the findings made by the [agency] were unreasonable. To that end, [judicial] inquiry is highly deferential and we consider only whether there is substantial evidence for the findings made by the [agency], *not* whether there is substantial evidence for some *other* finding that

could have been, but was not, made. That is, even if the evidence could support multiple conclusions, we must affirm the agency's decision unless there is no reasonable basis for that decision." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1029 (11th Cir. 2004) (en banc) (citations and quotation omitted).[4]

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons. [A court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based on a

---

[4] *See also Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam) ("The court need not determine whether it would have reached a different result based upon the record" because "[e]ven if we find that the evidence preponderates against the [Commissioner]'s decision, we must affirm if the decision is supported by substantial evidence."); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (under the substantial evidence standard, "we do not reverse the [Commissioner] even if this court, sitting as a finder of fact, would have reached a contrary result…"); *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("In light of our deferential review, there is no inconsistency in finding that two successive ALJ decisions are supported by substantial evidence even when those decisions reach opposing conclusions. Faced with the same record, different ALJs could disagree with one another based on their respective credibility determinations and how each weighs the evidence. Both decisions could nonetheless be supported by evidence that reasonable minds would accept as adequate."); *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991) ("Substantial evidence may even exist contrary to the findings of the ALJ, and we may have taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the findings cannot be overturned."); *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.").

reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts.").[5]

---

[5] However, the "burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409, 129 S. Ct. 1696, 173 L. Ed. 2d 532 (2009). *See also Scharlow v. Schweiker*, 655 F.2d 645, 648 (5th Cir. Unit A Sept. 8, 1981) (per curiam) ("It is the claimant who bears the weighty burden of establishing the existence of a disability within the meaning of the Act, and therefore the appellant has the burden of showing that the Secretary's decision is not supported by substantial evidence in the record." (citation omitted)); *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) (per curiam) (unpublished) ("Under a substantial evidence standard of review, [the claimant] must do more than point to evidence in the record that supports her position; she must show the absence of substantial evidence supporting the ALJ's conclusion."). "[D]istrict court judges are not required to ferret out delectable facts buried in a massive record," *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) (28 U.S.C. § 2254 habeas proceedings), and " '[t]here is no burden upon the district court to distill every potential argument that could be made based on the materials before it…' " *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) (per curiam) (Fed. R. Civ. P. 56 motion for summary judgment) (quoting *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc)) (ellipsis added). The Eleventh Circuit Court of Appeals, whose review of Social Security appeals "is the same as that of the district court[,]" *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam), generally deems waived claims of error not fairly raised in the district court. *See Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115-16 (11th Cir. 1994) ("As a general principle, [the court of appeals] will not address an argument that has not been raised in the district court…Because Stewart did not present any of his assertions in the district court, we decline to consider them on appeal." (applying rule in appeal of judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3)); *Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) (per curiam) (same); *Hunter v. Comm'r of Soc. Sec.*, 651 F. App'x 958, 962 (11th Cir. 2016) (per curiam) (unpublished) (same); *Cooley v. Comm'r of Soc. Sec.*, 671 F. App'x 767, 769 (11th Cir. 2016) (per curiam) (unpublished) ("As a general rule, we do not consider arguments that have not been fairly presented to a respective agency or to the district court. *See Kelley v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999) (treating as waived a challenge to the administrative law judge's reliance on the testimony of a vocational expert that was 'not raise[d] . . . before the administrative agency or the district court')."); *In re Pan Am. World Airways, Inc., Maternity Leave Practices & Flight Attendant Weight Program Litig.*, 905 F.2d 1457, 1462 (11th Cir. 1990) ("[I]f a party hopes to preserve a claim, argument, theory, or defense for appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it."); *Jones v. Apfel*, 190 F.3d

The "substantial evidence" "standard of review applies only to findings of fact.

---

1224, 1228 (11th Cir. 1999) (applying *In re Pan American World Airways* in Social Security appeal); *Sorter v. Soc. Sec. Admin., Comm'r*, 773 F. App'x 1070, 1073 (11th Cir. 2019) (per curiam) (unpublished) ("Sorter has abandoned on appeal the issue of whether the ALJ adequately considered her testimony regarding the side effects of her pain medication because her initial brief simply mentions the issue without providing any supporting argument. *See Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278–79 (11th Cir. 2009) (explaining that 'simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue')."); *Figuera v. Comm'r of Soc. Sec.*, 819 F. App'x 870, 871 n.1 (11th Cir. 2020) (per curiam) (unpublished) ("Figuera also argues the ALJ failed to properly assess her credibility … However, Figuera did not adequately raise this issue in her brief before the district court. She raised the issue only summarily, without any citations to the record or authority. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) (noting that a party 'abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority'). As a result, we do not address the sufficiency of the ALJ's credibility finding."); *Turner v. Social Security Administration, Commissioner*, No. 21-13590, 2022 WL 842188, at *2 (11th Cir. Mar. 22, 2022) (per curiam) (unpublished) ("An appellant forfeits an argument by 'mak[ing] only passing references to it or rais[ing] it in a perfunctory manner without supporting arguments and authority.' *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014). In her briefing, Turner states that the Appeals Council failed to request her records or obtain a consultative evaluation. But she cites no authorities or makes any other argument tending to establish that it had a duty to do so. She has therefore failed to adequately develop this argument, and it is forfeited."); *Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 899 (11th Cir. 2022) ("Harner's references to the substantiality of the evidence, the administrative law judge's analysis of her fibromyalgia, and the administrative judge's consideration of her daily activities as '[d]iminish[ing] the [p]ersuasiveness of [h]er [a]llegations' consist only of block quotations from and cursory mentions of various decisions of this and other courts. Harner failed to refer to the facts of her case or to provide any meaningful explanation as to how the decisions she cites apply to her claim, her arguments are forfeited.")*Grant v. Soc. Sec. Admin., Comm'r*, No. 21-12927, 2022 WL 3867559, at *2 (11th Cir. Aug. 30, 2022) (per curiam) (unpublished) (appellant forfeited most challenges where "brief consist[ed] largely of block quotations with only passing or conclusory references to how the law and the relevant facts relate"); *Walker v. Comm'r, Soc. Sec. Admin.*, 835 F. App'x 538, 542 (11th Cir. 2020) (per curiam) (unpublished ("As the government notes, Walker's argument on this issue consists of lengthy block quotes to caselaw without any attempt to apply the law to the facts of this case. He has thus abandoned the issue by failing to develop his arguments.").

No similar presumption of validity attaches to the [Commissioner]'s conclusions of law, including determination of the proper standards to be applied in reviewing claims." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (quotation omitted). *Accord, e.g., Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) ("Our standard of review for appeals from the administrative denials of Social Security benefits dictates that '(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ....' 42 U.S.C.A. s 405(g) … As is plain from the statutory language, this deferential standard of review is applicable only to findings of fact made by the Secretary, and it is well established that no similar presumption of validity attaches to the Secretary's conclusions of law, including determination of the proper standards to be applied in reviewing claims." (some quotation marks omitted)). This Court "conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). " 'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.' " *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)). *Accord Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th

Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004)."). Moreover, an ALJ's decision must "state with at least some measure of clarity the grounds for [the] decision." *Owens*, 748 F.2d at 1516; *Winschel*, 631 F.3d at 1179. A court cannot "affirm simply because some rationale might have supported the [Commissioner]' conclusion[,]" as "[s]uch an approach would not advance the ends of reasoned decision making." *Owens*, 748 F.2d at 1516. Rather, "an agency's order must be upheld, if at all, on the same basis articulated in the order by the agency itself." *Fed. Power Comm'n v. Texaco Inc.,* 417 U.S. 380, 397, 94 S. Ct. 2315, 41 L. Ed. 2d 141 (1974) (quotation omitted). *See also Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) ("The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council."); *Nance v. Soc. Sec. Admin., Comm'r*, 781 F. App'x 912, 921 (11th Cir. 2019) (per curiam) (unpublished)[6] ("Agency actions … must be upheld on the same bases articulated in the agency's order." (citing *Texaco Inc.,* 417 U.S. at 397, and *Newton*, 209 F.3d at 455)).

Eligibility for SSI requires a showing that the claimant is "aged, blind, or

---

[6] In this circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2. *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

disabled." *See* 42 U.S.C. § 1382(a)(1)-(2). "An individual under the age of 18 shall be considered disabled ... if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[,]" 42 U.S.C. § 1382c(a)(3)(C)(i), so long as that individual has not engaged in substantial gainful activity. *Id.* § 1382c(a)(3)(C)(ii).

> When evaluating whether a child, who was once found disabled, remains eligible for benefits, an ALJ must follow a three-step analysis. See 20 C.F.R. § 416.994a(b). First, the ALJ must determine whether there has been medical improvement in the child's impairment. Id. § 416.994a(b)(1). Medical improvement means "any decrease in the medical severity of [the child's] impairment(s) which was present at the time of the most recent favorable decision that [the child was] disabled." Id. § 416.994a(c). If the ALJ finds there has been medical improvement, the ALJ must then, in step two, analyze whether the child's impairment still meets or equals the severity of the listed impairment section that he met or equaled before or at the time of the disability finding. Id. § 416.994a(b)(2). If not, the ALJ proceeds to step three and determines if the child is currently disabled under the rules, considering all the impairments that the claimant has now, including any not presented or not considered in the earlier finding of disability. Id. § 416.994a(b)(3).

*Planas on behalf of A.P. v. Comm'r of Soc. Sec.*, 842 F. App'x 495, 498–99 (11th Cir. 2021) (per curiam) (unpublished).

> The Social Security Administration uses a sequential, three-step analysis to determine whether a child is disabled. The claimant must establish (1) whether the child is working; (2) whether the child has a severe impairment or combination of impairments; and (3) whether the child's impairment or combination of impairments meets, medically equals, or functionally equals the severity of an impairment in the Listing of Impairments. 20 C.F.R. § 416.924(a); *id.* Pt. 404, Subpt. P, App. 1...

…To determine whether an impairment or combination of impairments "functionally equals" a listed impairment, the administrative law judge assesses the claimant on six domains, including (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for himself; and (6) health and physical well-being. *Id.* §§ 416.926a(a), (b)(1), (d). The claimant must establish that he suffers from an "extreme" limitation in one of the domains, or "marked" limitations in two of the domains. *Id.* § 416.926a(a).

*Parks ex rel. D.P. v. Comm'r, Soc. Sec. Admin.*, 783 F.3d 847, 850-51 (11th Cir. 2015).

"The burden lies with the claimant to prove that he meets or equals a Listing." *Gray ex rel. Whymss v. Comm'r of Soc. Sec.*, 454 F. App'x 748, 750 (11th Cir. 2011) (per curiam) (unpublished) (citing *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991)). However, "the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations omitted)). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

If a court determines that the Commissioner reached a decision "by focusing upon one aspect of the evidence and ignoring other parts of the record[, i]n such

circumstances [the court] cannot properly find that the administrative decision is supported by substantial evidence. It is not enough to discover a piece of evidence which supports that decision, but to disregard other contrary evidence." *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986). Nevertheless, " 'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole.' " *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam) (quotation and brackets omitted)).

When the ALJ denies benefits and the Appeals Council denies review of that decision, a court "review[s] the ALJ's decision as the Commissioner's final decision[,]" *Doughty*, 245 F.3d at 1278, and the Court "will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998). However, " '[w]ith a few exceptions, the claimant is allowed to present new evidence at each stage of th[e] administrative process,' including before the Appeals Council." *Washington v. Soc. Sec. Admin., Com'r*, 806 F.3d 1317, 1320 (11th Cir. 2015) (per curiam) (alterations added) (quoting *Ingram*, 496 F.3d at 1261). "[W]hen a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262.

### III.   *Summary of the ALJ's Decision*

At the time of L.B.'s August 31, 2018 disability determination (referred to as the "comparison point decision" or CPD), L.B. was found to have a single medically determinable impairment, low birth weight, and to have met Listing 100.04 (Low birth weight in infants from birth to attainment of age 1)[7] in Appendix 1 of the SSA's Listing of Impairments, 20 C.F.R. § 404, Subpt. P, App. 1.[8] (Doc. 13, PageID.66, 122-127). At the first step of the continuing-disability evaluation, the ALJ determined that L.B. had experienced medical improvement from low birth weight at the time of the CPD as of February 1, 2020. (*Id.*, PageID.66-67). At the second step of the continuing-disability evaluation, the ALJ determined that L.B.—who was an "older infant" on both February 1, 2020, and the date of the ALJ's decision—no longer met or equaled the Listing of Impairments based on low birth weight as of February 1, 2020. (*Id.*, PageID.67-72). Accordingly, the ALJ proceeded to step three of the

---

[7] Listing 100.04 is met if either (1) an infant's birth weight was less than 1200 grams, or (2) the infant met a "sliding scale" of birth weight compared to gestational age, ranging from 1250 grams or less for 32 weeks of gestation, to 2000 grams or less for 37-40 weeks of gestation.

[8] The Listing of Impairments "identify those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." *Yuckert*, 482 U.S. at 153. *See also Sullivan v. Zebley*, 493 U.S. 521, 525, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990) ("In the third step, the medical evidence of the claimant's impairment is compared to a list of impairments presumed severe enough to preclude any gainful work … If the claimant's impairment matches or is 'equal' to one of the listed impairments, he qualifies for benefits without further inquiry."); *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997) ("If the claimant's condition meets or equals the level of severity of a listed impairment, the claimant at this point is conclusively presumed to be disabled based on his or her medical condition.").

continuing-disability evaluation, which meant engaging in the three-step sequential child-disability evaluation to determine if L.B. was otherwise disabled since February 1, 2020.[9]

While not making an explicit Step One finding, by proceeding directly to Step Two, the ALJ implicitly determined that L.B. had not engaged in substantial gainful activity since February 1, 2020. (*See id.*, PageID.71). At Step Two, the ALJ determined that L.B. had the following severe impairments since February 1, 2020: asthma, a mixed receptive-expressive language disorder, and a gross motor development delay. (*Id.*, PageID.71-72). At Step Three, the ALJ found that L.B. did not have an impairment or combination of impairments that met, medically equaled, or functionally equaled the severity of a specified impairment in Appendix 1 of the Listing of Impairments since February 1, 2020. (*Id.*, PageID.72-76). In determining that L.B. did not functionally equal a Listing since February 1, 2020, the ALJ found that L.B. had no limitation in the domains of attending and completing tasks, and of caring for oneself, and "less than marked" limitation in acquiring and using information, interacting and relating with others, moving about and manipulating objects, and health and physical well-being (*see id.*) – thus failing to satisfy the requirement that a child applicant demonstrate either an "extreme" limitation in one domain or "marked" limitation in two. Accordingly, the ALJ found that L.B.'s disability had ended on February 1, 2020, and that L.B. had not become disabled

---

[9] The Court will hereinafter use "Step One," "Step Two," and "Step Three" when referencing individual steps of the child-disability evaluation.

again since that date through the date of the ALJ's decision.  (*Id.*, PageID.76).

## IV.   *Analysis*

### a.   **Duty to Develop a Full and Fair Record**

Butler first contends the ALJ did not fulfill his "basic duty to develop a full and fair record." *Henry*, 802 F.3d at 1267 (citing *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995) (per curiam)). No reversible error has been shown.

Regarding the Commissioner's responsibility to develop the record, the Social Security regulations state:

> Before we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application unless there is a reason to believe that development of an earlier period is necessary or unless you say that your disability began less than 12 months before you filed your application. We will make every reasonable effort to help you get medical evidence from your own medical sources and entities that maintain your medical sources' evidence when you give us permission to request the reports.

20 C.F.R. § 416.912(b)(1). *See also Tackett v. Comm'r of Soc. Sec.*, No. 21-11852, 2022 WL 2314095, at *4 (11th Cir. June 28, 2022) (per curiam) (unpublished) (citing 20 C.F.R. § 416.912(b)(1) as setting out the ALJ's "basic obligation to develop a full and fair record").

"A Social Security claimant has a statutory right, which may be waived, to be represented by counsel at a hearing before an ALJ." *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997) (per curiam) (citing *Brown*, 44 F.3d at 934). "The [Commissioner] has a duty to notify the claimant of this right prior to such a hearing." *Cowart v. Schweiker*, 662 F.2d 731, 734 (11th Cir. 1981). "The deprivation of the

statutory right to counsel at a Social Security hearing is a statutory wrong, not a constitutional wrong." *Graham*, 129 F.3d at 1422 (citing *Holland v. Heckler*, 764 F.2d 1560, 1563 (11th Cir. 1985) (per curiam)). "However, where the right to representation has not been waived, the hearing examiner's obligation to develop a full and fair record rises to a special duty." *Id.* (citing *Brown*, 44 F.3d at 934-35). "This special duty requires the ALJ to 'scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts' and to be 'especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited.'" *Id.* at 1423 (quoting *Cowart*, 662 F.2d at 735 (citations omitted)).

The ALJ's decision states that, "[a]lthough informed of the right to representation, the claimant chose to appear and testify without the assistance of an attorney or other representative" at the January 12, 2022 hearing. (Doc. 13, PageID.63). At the start of the hearing, the ALJ advised Butler as follows:

> Now the second thing I'm supposed to do is to say that I know that you have no attorney representing you and you're not required to have any attorney. Attorneys are not required to attend the hearings at all but I'm also supposed to say that if you would like one 30-day postponement to try to get an attorney, sometimes they can be helpful. They may know the regulations. They may know how to keep me from making mistakes, so they can be helpful but they're not required.

(Doc. 13, PageID.113). The ALJ then asked Butler if she had "decided whether [she]'d like to go ahead with [the] hearing today or d[id she] think [she]'d like one 30-day postponement[,]" to which Butler responded, "I would like to go ahead."

That colloquy does not support the determination that Butler was "informed of

the right to representation."[10] While the ALJ suggested that representation by an attorney "can be helpful[,]" nothing in his statement can fairly be read as informing Butler of a right to representation at the hearing. At most, the ALJ's repeated insistence that Butler was not "required" to have an attorney only hinted at the right to representation through negative inference, and very likely downplayed the significance of that right. Moreover, the ALJ's reference to only "attorneys" did not adequately convey that Butler also had the right to non-attorney representation at the ALJ hearing. *See* 42 U.S.C. § 406(a)(1).[11] Finally, the ALJ's question to Butler only asked if she'd like to go ahead with the hearing or postpone it, and did not convey that Butler would waive the right to representation if she chose to proceed. Butler's simple response that she would "like to go ahead" also does not evidence a knowing waiver of her right to representation.[12] Accordingly, there was no valid waiver of

---

[10] The Commissioner has not argued that Butler received any form of written notice prior to the hearing that informed her of the right to representation.

[11] While minor L.B. was technically represented by Butler, his parent, at the administrative level, the Commissioner has not argued that Butler is the kind of qualified non-attorney "representative" contemplated by the Social Security statutes as allowed to represent Social Security claimants. See 42 U.S.C. § 406(a)(1) ("The Commissioner of Social Security may prescribe rules and regulations governing the recognition of agents or other persons, other than attorneys as hereinafter provided, representing claimants before the Commissioner of Social Security, and may require of such agents or other persons, before being recognized as representatives of claimants that they shall show that they are of good character and in good repute, possessed of the necessary qualifications to enable them to render such claimants valuable service, and otherwise competent to advise and assist such claimants in the presentation of their cases.").

[12] In *Cowart*, the Eleventh Circuit found that the following exchange between the ALJ and the claimant did not "evince[] a wish to proceed without counsel[:]"

Butler's right to be represented at the ALJ hearing, and the ALJ's duty to develop and full and fair record rose to a "special duty."

When the "special duty" applies, courts " 'are not required to determine that the presence of counsel would necessarily have resulted in any specific benefits in the handling of the case before the ALJ.' " *Brown*, 44 F.3d at 935 (quoting *Clark v. Schweiker*, 652 F.2d 399, 404 (5th Cir. Unit B July 1981)[13]). Nevertheless, even where the "special duty" applies, "there must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded to the Secretary for further development of the record…The

---

ALJ: You were advised in the notice of hearing and correspondence that our office had with you about your right to have a lawyer or other qualified person here to aid you at this hearing. Did you read and understand this?

CLAIMANT: Yes, yes.

ALJ: And you're here without a lawyer so can I assume that you wish to proceed without one?

CLAIMANT: Yes, as of now, I don't have one.

662 F.2d at 734 (quotation marks omitted). The undersigned finds the ALJ's colloquy with Butler here to be even less clear regarding the right to representation than the exchange in *Cowart*.

[13] On "October 1, 1981 pursuant to the Fifth Circuit Court of Appeals Reorganization Act of 1980, P.L. 96-452, 94 Stat. 1995, … the United States Court of Appeals for the Fifth Circuit was divided into two circuits, the Eleventh and the 'new Fifth.' " *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc). "The Eleventh Circuit, in the *en banc* decision *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981." *Smith v. Shook*, 237 F.3d 1322, 1325 n.1 (11th Cir. 2001) (per curiam).

court should be guided by whether the record reveals evidentiary gaps which result in unfairness or 'clear prejudice.' " *Graham*, 129 F.3d at 1423 (citing *Brown*, 44 F.3d at 934-35). Moreover, " '(t)he social security hearing examiner ... does not act as counsel. He acts as an examiner charged with developing the facts.' " *Smith v. Schweiker*, 677 F.2d 826, 829 (11th Cir. 1982) (quoting *McConnell v. Schweiker*, 655 F.2d 604, 606 (5th Cir. Sept. 8, 1981)).

Near the close of the hearing, the ALJ stated that "it may be we have to get up-to-date records from the development and behavioral place[,]" after Butler testified a doctor at "USA Behavioral Clinic" whose name she could not remember told her that L.B. was "on an autism spectrum" and should be evaluated further. (Doc. 13, PageID.115, 120).[14] Butler argues that the ALJ's failure to obtain any such records constitutes an "evidentiary gap" that prejudiced L.B. The undersigned disagrees.

The ALJ addressed the record evidence regarding autism as follows:

In April 2021 Bayley Scales of Infant and Toddler Development testing revealed cognitive abilities within the borderline to low average range, language skills in the extremely low to borderline range, receptive skills comparable to expressive communication, motoric ability within the borderline to low average range, and fine motor skills comparable to gross motor skills. Accordingly, the claimant was diagnosed with a gross motor development delay and mixed receptive-expressive language

---

[14] The full statement was: "I'm going to go through the – all the exhibits that we have again now that we've had a chance to talk. I think you have pretty close to 400 pages of medical information in here so I've got to go back through that and it may be that we have to get the up-to-date records from the development and behavioral place and maybe where he got the ear problem taken care of with the tubes out, but you did everything that you had to for today." (Doc. 13, PageID.120). Butler does not argue that the ALJ failed to obtain records regarding L.B.'s ear problem.

disorder with a recommendation to continue speech therapy services through REACH Pediatric Therapy and referral for a physical therapy evaluation and treatment as indicated. (Exhibit 9F) The claimant also exhibited several behaviors concerning for autism spectrum disorder; however, a subsequent Brief Observation of Symptoms of Autism (BOSA) evaluation showed no unusual sensory interests, repetitive movements, compulsive behaviors, receptive play, or self-injurious behaviors. Accordingly, record does not show an autism diagnosis and otherwise indicates that the claimant could benefit from outpatient behavioral management training to address reported behavioral concerns. (Exhibit 10F)

Although ADOS and BASC-3 testing has been recommended, the claimant has not yet been evaluated for a behavior disorder or officially diagnosed with autism. Furthermore, although he remained in weekly speech therapy throughout the remainder of the record, the claimant never initiated physical therapy, occupational therapy, or behavior therapy, nor did he attend children rehabilitation services. (Exhibit 11F) Throughout the record, progress notes otherwise show that the claimant remained active and enjoyed climbing, running, jumping, and playing with a ball. He also remained in daycare and played well with others in his peer group. Furthermore, records show that developmentally, "he has done well overall," despite some concerns regarding his fine motor skills and delays in his speech. (Exhibit 7F, 11F)

(Doc. 13, PageID.73-74).

The ALJ's statement at the conclusion of L.B.'s hearing—that he "may" have to obtain up-to-date records—made no guarantee that there were additional records to obtain, and Butler does not point to any records existing at the time the ALJ rendered his decision that he purportedly failed to obtain. Instead, Butler presents— seemly for the first time to this Court—a Behavioral Health Office Clinic Note dated June 2 or 3, 2022, diagnosing L.B. with autism spectrum disorder based on testing administered on May 31, 2022 (Doc. 20-1, PageID.756-761)—almost five months after

the ALJ hearing, and over a month after the ALJ issued his unfavorable decision.

The Commissioner argues, correctly, that Butler "cites no authority for the radical proposition that an ALJ is required to obtain medical records that do not even in [sic] exist or explain how an ALJ would ever be able to render a decision on a developed record under her proposed standard given that the creation of future medical records is always possible." (Doc. 25, PageID.774). Indeed, the Social Security regulations provide that, when record evidence is "insufficient"—meaning "it does not contain all the information…need[ed] to make [a] determination or decision"—the ALJ's duty to resolve the insufficiency extends only to "request[ing] additional <u>existing</u> evidence…" 20 C.F.R. § 416.920b(b)(2)(ii) (emphasis added).

Even assuming an ALJ's duty to develop the record might sometimes require waiting for anticipated medical evidence, the undersigned disagrees with Butler that the record was sufficiently clear that L.B.'s additional autism testing was imminent, such that the ALJ was bound to wait for it to conclude before issuing a decision. As the ALJ noted, based on the medical record before him at the time of his decision, L.B. was last tested for autism spectrum in April 2021, a year before the ALJ's decision. While the notes from that examination indicated that L.B. would "return to this clinic at a later date to be administered the ADOS-2" (Doc. 13, PageID.628)—the testing that was ultimately administered at the May 2022 examination—the notes did not say when that later testing would occur. Butler also did not mention any scheduled autism testing when she testified at the ALJ hearing held over 3 months before the ALJ issued his decision. In light of these facts, the ALJ here did not violate

his duty to develop the record by not waiting any longer for further testing.[15]

Butler also argues the ALJ neglected to elicit favorable testimony from her at the ALJ hearing regarding L.B.'s limitations. According to Butler, "[w]hile the ALJ did ask [her] some broad questions about her concerns for L.[]B.'s behavior, the ALJ did not elicit testimony from [Butler] about the six domains of functions…" (Doc. 20, PageID.707). The ALJ hearing in this case was certainly brief—Butler was the only witness to testify, and substantive questioning regarding L.B.'s impairments and limitations spanned only 6 transcript pages (*see* Doc. 13, PageID.114-120). However, even if the ALJ's questioning at the hearing "was less than totally satisfactory[,] a showing of prejudice must be made before we will find that [the] hearing violated [L.B.]'s rights of due process and requires a remand to the [Commissioner] for reconsideration." *Kelley v. Heckler*, 761 F.2d 1538, 1540 (11th Cir. 1985) (per curiam). "This at least requires a showing that the ALJ did not have all of the relevant evidence before him in the record (which would include relevant testimony from claimant), or that the ALJ did not consider all of the evidence in the record in reaching his decision." *Id.*

---

[15] *Brown v. Shalala*, 44 F.3d 931, on which Butler heavily relies in arguing this claim of error, is distinguishable. There, the court found that the ALJ failed in his duty to develop the record where there was no indication the ALJ contacted claimant Brown's doctor for "up-to-date medical records even though Brown testified that she was examined by him twice just prior to the hearing[,]" and where "[t]he ALJ also agreed to procure a report from the center in Macon where Brown had undergone rehabilitation therapy, but no such document was made a part of the record." 44 F.3d at 935. Here, Butler does not point to any examinations or records predating the ALJ's decision that the ALJ allegedly failed to procure, and the ALJ here did not make a definite promise to obtain specific medical records as did the ALJ in *Brown*.

Even if the ALJ's hearing was unduly abbreviated, Butler has failed to show that L.B. was prejudiced by it. Butler's only specific complaint regarding the hearing is that the ALJ did not expressly question her regarding each of the six domains of functioning in the Step Three functional-equivalence analysis, thus possibly preventing Butler from providing testimony relevant to each domain. However, Butler has cited no authority indicating than the ALJ's duty to develop the record required him to do so.[16] Moreover, the mere "assertion that [a claimant] might have benefited from a more extensive hearing is pure speculation" insufficient to show prejudice, *id.*, and Butler does not identify any specific information she believes the ALJ's questioning failed to elicit.[17]

---

[16] *Cowart v. Schweiker*, which Butler does cite, held that the ALJ failed to elicit favorable evidence by not asking any questions regarding the claimant's condition to the claimant's husband, who was present at the hearing. 662 F.2d at 735. *Brown v. Shalala*, citing to *Cowart*, reached a similar conclusion. *See Brown*, 44 F.3d at 936 ("We…observe that the ALJ did not question Brown's husband concerning her complaints. In *Cowart*, this court held that the ALJ failed to discharge his special duty to develop the facts where he neglected to elicit such clearly relevant and readily available testimony. *See Cowart*, 662 F.2d at 735. The transcript of the hearing portrays a claimant who had great difficulty conveying with any precision the manner in which her various subjective ailments affected her ability to engage in substantial gainful activity." (footnote omitted)). *Cowart* and *Brown*, however, each involved a complete failure by an ALJ to elicit <u>any</u> testimony about a claimant's condition from an available witness with likely relevant knowledge. Here, on the other hand, the ALJ did question Butler regarding L.B.'s condition.

[17] In her reply, Butler claims that the ALJ "did not address the diagnosis of autism, even after Plaintiff stated L.[]B. was on the spectrum." (Doc. 28, PageID.792). However, there was no diagnosis of autism spectrum disorder from a medical source in the record at the time the ALJ issued his decision, and the hearing transcript reflects that the ALJ attempted to ascertain what health care providers had suggested an autism diagnosis when Butler brought it up at the hearing. (*See* Doc. 13, PageID.115). Butler's testimony, by itself, was not proof that L.B. had been diagnosed with autism, *see* 20 C.F.R. § 416.921 ("Your impairment(s) must result

Butler also claims the ALJ failed to develop the record by not ordering a consultative examination. [18] The Social Security regulations provide that the Commissioner "may purchase a consultative examination to try to resolve an inconsistency in the evidence or when the evidence as a whole is insufficient to support a determination or decision on your claim. Some examples of when [the Commissioner] might purchase a consultative examination to secure needed medical evidence, such as clinical findings, laboratory tests, a diagnosis, or prognosis, include but are not limited to: (1) The additional evidence needed is not contained in the records of your medical sources; (2) The evidence that may have been available from your treating or other medical sources cannot be obtained for reasons beyond your control, such as death or noncooperation of a medical source; (3) Highly technical or specialized medical evidence that we need is not available from your treating or other medical sources; or (4) There is an indication of a change in your condition that is likely to affect your ability to work, or, if you are a child, your functioning, but the current severity of your impairment is not established." 20 C.F.R. § 416.919a(b). The Eleventh Circuit has held that an ALJ "is not required to order a consultative

_____

from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. Therefore, a physical or mental impairment must be established by objective medical evidence from an acceptable medical source."), and the ALJ asking her if she remembered what medical sources told her about L.B.'s autism spectrum disorder indicates an attempt to verify Butler's claim with objective medical evidence.

[18] "A consultative examination is a physical or mental examination or test purchased for [the claimant] at [the Commissioner's] request and expense from a treating source or another medical source, including a pediatrician when appropriate." 20 C.F.R. § 416.919.

examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision." *Ingram*, 496 F.3d at 1269.

Butler has failed to show that the record lacked sufficient evidence for an informed decision. She argues that "[t]he ALJ should have ordered a consultative exam for the autism spectrum disorder suspicion" (Doc. 20, PageID.708), but the ALJ, despite noting that L.B. had not been "officially diagnosed with autism" at the time of his decision, still accounted for a potential autism diagnosis in his decision, as he expressly considered whether L.B. met Listing 112.10 (autism spectrum disorder). (*See* Doc. 13, PageID.72). The ALJ did not find that L.B. failed to meet that listing because he lacked an official autism diagnosis, but because the record did not show sufficiently severe limitations justifying its application.[19] The same is true at the functional-equivalence stage of the analysis.[20] Butler has failed to show that simply

---

[19] (*See* Doc. 13, PageID.72 ("The claimant's impairments do not satisfy the requirements of listing 112.10 or 112.14 because the record does not show qualitative deficits in verbal communication, nonverbal communication and social interaction and significantly restricted, repetitive patterns of behavior, interests, or activities. Furthermore, the record doesn't show a delay or deficit in age-appropriate skills or a loss of previously acquired skills with marked or extreme limitation in the ability to plan and control motor movement, learn and remember, interact with others, or regulate physiological functions, attention, emotion, and behavior.")).

[20] (*See* Doc. 13, PageID.74 ("Although ADOS and BASC-3 testing has been recommended, the claimant has not yet been evaluated for a behavior disorder or officially diagnosed with autism. Furthermore, although he remained in weekly speech therapy throughout the remainder of the record, the claimant never initiated physical therapy, occupational therapy, or behavior therapy, nor did he attend children rehabilitation services. (Exhibit 11F) Throughout the record, progress notes otherwise show that the claimant remained active and enjoyed climbing, running, jumping, and playing with a ball. He also remained in daycare and played well with others in his peer group. Furthermore, records show that developmentally, "he has done well overall," despite some concerns regarding his fine motor skills and delays

obtaining an official autism diagnosis would have altered the ALJ's decision—the Social Security regulations provide that "establish[ing] the existence of an impairment" cannot be based solely on "a diagnosis[,]" but must be shown by "objective medical evidence from an acceptable medical source" demonstrating "anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 416.921. Moreover, the mere existence of an impairment is not enough to show disability. Rather, the claimant must show that the impairment impacts his functioning to a disabling extent. *See Moore*, 405 F.3d at 1213 n.6 ("To a large extent, Moore questions the ALJ's RFC determination based solely on the fact that she *has* varus leg instability and shoulder separation. However, the mere existence of these impairments does not reveal the extent to which they limit her ability to work or undermine the ALJ's determination in that regard."); *McCruter*, 791 F.2d at 1547 ("[T]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality."). Here, the ALJ focused on the severity of Butler's limitations, rather than the mere absence of a diagnosis, in finding L.B. no longer disabled.

Butler also claims a consultative examination was required to resolve ambiguities in the record, arguing:

> On the one hand, L.[]B.'s teacher, Crystal Gaston, noted L.[]B.'s behavior displayed multiple deficiencies in reciprocal social behavior

---

in his speech. (Exhibit 7F, 11F)")).

that results in "Severe" interference in everyday social interactions, as well as "Clinically Significant" in the areas of hyperactivity, depression, attention problems, atypicality, and withdrawal. (R. 573, 574). On the other hand, L.[]B.'s speech pathologist, who had the most limited interaction with L.[]B., rated L.[]B.'s behavior as "Normal." (R. 37).

(Doc. 20, PageID.708).

Butler fails to note, however, that Gaston and the speech pathologist's assessments of L.B. were both included in treatment notes from visits with L.B.'s treating mental and behavioral health providers, and it is clear that those medical professionals incorporated Gaston and the pathologist's assessments in their own evaluations of L.B. Because Gaston and the speech pathologist's assessments had already been considered by L.B.'s own treating medical sources, the ALJ was well within his discretion to find that a consultative examination was unnecessary to further evaluate those assessments. *See Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999) (per curiam) (the ALJ is not "obligated to seek independent, additional expert medical testimony" when the record is sufficient to support the ALJ's decision). And ultimately, the Commissioner "is charged with the duty to weigh the evidence, to resolve material conflicts in the testimony, and to determine the case accordingly." *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) (per curiam). *See also Bouie v. Astrue*, 226 F. App'x 892, 894 (11th Cir. 2007) (per curiam) (unpublished) ("The resolution of conflicting evidence is the function of the ALJ, not the Court."); *Cooper v. Astrue*, 373 F. App'x 961, 962 (11th Cir. 2010) (per curiam) (unpublished) ("The task of determining a claimant's ability to work is within the province of the ALJ, not a doctor…").

In sum, while correct that the ALJ had a "special duty" to fully and fairly develop the record in L.B.'s case, Butler has largely failed to persuade the undersigned that the ALJ was derelict in this duty, and even where he arguably might have been, Butler has failed to persuasively show that it resulted in evidentiary gaps that prejudiced L.B.'s case.

### b.    Other Claims Regarding the ALJ's Decision

Butler complains that the ALJ's decision "relied heavily" upon the medical opinion of State agency reviewing physician George W. Hall, M.D., who found less than marked limitation in the domain of health and physical well-being, and no limitation in any of the other five domains of functioning. However, the ALJ did not fully adopt Dr. Hall's opinion, finding it "only partially persuasive" because "Dr. Hall did not have access to the entirety of the record in making his assessment, therefore the degree of limitation assessed in several domains is not sufficient to accommodate the claimant's limitations as set forth below." (Doc. 13, PageID.74). And indeed, unlike Dr. Hall, the ALJ found less than marked limitation in four of the six domains. Butler has failed to elaborate on how the ALJ's consideration of Dr. Hall's opinion was error.

Butler also complains that the ALJ did not consider all of L.B.'s impairments in finding that he was no longer disabled due to low birth weight. However, when determining whether a claimant who was previously found disabled is no longer disabled, an ALJ must first only consider "the impairment(s) [the claimant] had at the time of [the] most recent favorable determination or decision." 20 C.F.R. §

416.994a(b)(1). Only after an ALJ determines that the claimant is no longer disabled due to the impairments found at the time of the last favorable decision does the ALJ then proceed to consider "all impairments [the claimant] now ha[s], including any the claimant did not have at the time of [the] most recent favorable determination or decision, or that [the Commissioner] did not consider at that time." *Id.* § 416.994a(b)(1). Here, because L.B. was found to suffer only from the impairment of low birth weight when he was initially found disabled, the ALJ could not consider L.B.'s other impairments in determining whether he was still disabled due to low birth weight.

Butler also quarrels with the ALJ's consideration of certain evidence, but the undersigned is not persuaded of any reversible error. In brief, Butler argues that the ALJ should have given more weight to an April 28, 2021 behavioral evaluation than a subsequent one occurring March 10, 2022. As Butler describes it, the March 10, 2022 evaluation was "less favorable" to L.B. than the prior one because it was based in part on a questionnaire responses provided by L.B.'s speech pathologist, who only had "limited interaction" with L.B.—"once a week for speech therapy"—while the earlier evaluation was based in part on questionnaire responses provided by Gaston, L.B.'s teacher, and L.B.'s mother, who "had multiple hours over multiple days to observe L.[]B.'s behavior, social skills, and anything else pertinent to L.[]B.'s functioning." (Doc. 20, PageID.711).

However, it is not the province of the Court to reweigh the evidence or substitute its judgment for that of the ALJ. *Winschel*, 631 F.3d at 1178. "Under the

substantial evidence standard, [courts] cannot look at the evidence presented…to determine if interpretations of the evidence other than that made by the [agency] are possible. Rather, [courts] review the evidence that was presented to determine if the findings made by the [agency] were unreasonable. To that end,…we consider only whether there is substantial evidence for the findings made by the [agency], *not* whether there is substantial evidence for some *other* finding that could have been, but was not, made." *Adefemi*, 386 F.3d at 1029. So long as the Commissioner's factual findings are supported by substantial evidence, they must be affirmed, even if the evidence preponderates against them. *Ingram*, 496 F.3d at 1260.

Both evaluations incorporated their respective questionnaire responses into their findings, and Butler has failed to explain how the 2021 and 2022 evaluations materially differ, much less how the later one was "less favorable" to L.B., such that the ALJ's decision is called into question. To the extent the ALJ favored the report based on the speech pathologist's questionnaire over that based on the questionnaires of L.B.'s teacher and mother, Butler has failed to show that such a choice was unreasonable. Even if the pathologist only saw L.B. once a week, the pathologist, whose purpose was to provide L.B. "speech therapy," could reasonably be expected to better understand the medical significance of the terms used to report L.B.'s behavior, and to provide a more objective assessment, than a parent or teacher with a close relationship with L.B. *Cf. Cowart*, 662 F.2d at 735 (recognizing that "testimony from a claimant's spouse might be accorded less weight than testimony from a disinterested witness…"). Regardless, even if Butler can point to some evidence that

cuts against the ALJ's findings, she has failed to convince the undersigned that those findings are not at least supported by substantial evidence.[21]

No reversible error having been shown, the Court finds that the Commissioner's final decision finding L.B. no longer disabled is due to be **AFFIRMED** under sentence four of § 405(g).

### c.   "Sentence-Six" Remand

At oral argument, Butler, by then represented by different counsel than the one who completed her briefing, did not press any of the issues raised in her brief, and instead only argued, first the first time, that L.B.'s case should instead be remanded under sentence six of § 405(g) to allow the Commissioner to consider the June 2022 report of L.B.'s May 31, 2022 examination diagnosing him with autism spectrum disorder (Doc. 20, PageID.734-739). Butler has failed to show that such relief is warranted.

For "the purposes of a sentence four remand[,] 'a reviewing court is limited to the certified administrative record in examining the evidence…' " *Ingram*, 496 F.3d at 1268 (ellipsis added) (quoting *Caulder v. Bowen*, 791 F.2d 872, 876 (11th Cir. 1986)). However, the " 'sixth sentence of section 405(g) provides a federal court the power to remand the application for benefits to the Commissioner for the taking of additional evidence upon a showing 'that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in

---

[21] Any additional arguments that Butler raised in her briefing that have not been expressly addressed herein are summarily rejected as insufficiently raised and/or without merit.

a prior proceeding.' " *Id.* at 1261.

Generally, "new" evidence means " 'evidence not in existence or available to the claimant at the time of the administrative proceeding…' " *Id.* at 1267 (ellipsis added) (quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 626, 110 S. Ct. 2658, 2664, 110 L. Ed. 2d 563 (1990)).[22] Here, it is undisputed that the June 2, 2022 examination report was in existence and available to L.B. at the time of his administrative proceedings, such that it could have been submitted to the Appeals Council well before it denied review of the ALJ's decision on October 28, 2022. It is also undisputed that the June 2, 2022 report was never incorporated into the record or expressly considered by the Appeals Council.

In *Milano v. Bowen*, 809 F.2d 763 (11th Cir. 1987), the Eleventh Circuit "held that remand under sentence six is appropriate for the Commissioner to consider new evidence that the Commissioner did not have an opportunity to consider because the evidence was not properly submitted to the Appeals Council." *Ingram*, 496 F.3d at 1268 (describing *Milano* as "settled precedent[]"). In that case, claimant Milano mailed evidence one day after the Appeals Council's extended deadline to submit additional evidence. 809 F.2d at 765. Approximately one month later, the Appeals Council denied review, without including the late-submitted evidence in the record or mentioning it in the Council's decision. *Id.*

---

[22] The "new" evidence must also be "noncumulative." *Caulder*, 791 F.2d at 877. Here, the June 2, 2022 report appears to be "noncumulative" because it provided an official diagnosis of autism spectrum disorder, which the ALJ noted had been lacking at the time he issued his unfavorable decision.

The Eleventh Circuit recognized that the late-submitted "evidence was available at the administrative proceeding; it simply was not considered by the Appeals Council because it was not timely filed." *Id.* at 767. The court "nonetheless conclude[d] that a filing that was mailed one day after the extended time period, such as that involved in this case, satisfies the good cause requirement of § 405(g)[,]" reasoning: "[T]he procedural default is de minimus. Ample time remained for the Appeals Council to consider and act upon the evidence which Milano had submitted. No administrative delay could possibly have resulted from Milano's action." *Id.* So, *Milano* stands for the proposition that evidence in existence at the time of a claimant's administrative proceedings, but not timely submitted for consideration, can still support a sentence-six remand. *See Ingram*, 496 F.3d at 1268 ("In *Milano v. Bowen*, we concluded that a district court correctly evaluated a motion to remand under sentence six instead of sentence four because Milano had submitted additional evidence to the Appeals Council one day after the deadline for review…Because the Appeals Council refused to consider Milano's untimely evidence, we treated the evidence as if it had been first presented to the district court and held that 'the district court properly evaluated the case under' sentence six." (quoting *Milano*, 809 F.2d at 766)).

At oral argument, Butler's counsel represented that Butler attempted to fax the June 2, 2022 report to the Appeals Council prior to its decision, but either transposed or missed a digit in the fax number used. Butler argues that this mistake, combined with L.B.'s unrepresented status at the administrative level, constitutes

"good cause" for failure to present the June 2, 2022 report at the administrative level. The undersigned disagrees, however, as this error caused more than the "de minimus" inconvenience at issue in *Milano*. In *Milano*, it was seemingly uncontested that the Appeals Council actually did receive the claimant's tardy evidentiary submissions, and the Eleventh Circuit found "good cause" to excuse the brief period of untimeliness because the Appeals Council still had ample time to consider it before denying review. Here, there is no indication that the Appeals Council actually received the June 2, 2022 report despite it being faxed to the wrong number. Thus, unlike in *Milano*, "administrative delay could…have resulted from" Butler's failure to properly submit this new evidence. Moreover, the record indicates that Butler was already aware of difficulties in submitting material by fax, as her request for review of the ALJ's decision submitted to the Appeals Council—dated May 27, 2022, and received by the SSA on June 2, 2022—claims she "wasn't able to submit new medical records that were needed due to incorrect fax number." (Doc. 13, PageID.204). There is no indication that Butler followed up with the SSA to make sure the June 2 report had been received and made a part of the record, or why she could not simply mail the report to the Appeals Council as she did with her request for review (*see id.*, PageID.203).

Nevertheless, the undersigned also finds that a sentence-six remand is unwarranted because the June 2, 2022 report is not "material." To be "material," the new evidence must be "relevant and probative so that there is a reasonable possibility that it would change the administrative result…" *Hunter v. Soc. Sec. Admin.,*

*Comm'r*, 808 F.3d 818, 821 (11th Cir. 2015) (quotation omitted). Here, Butler has only argued that the report provides a diagnosis of autism spectrum disorder that the ALJ noted was missing in the record before him at the time of his decision. However, as was discussed previously, a mere diagnosis is not sufficient to show disability, or even a medically determinable impairment, and the ALJ did not find the lack of an autism diagnosis determinative. Rather, the ALJ discussed then-available records suggesting that L.B. might have autism spectrum disorder, and appears to have assumed that L.B. could in fact did have such an impairment. The ALJ expressly considered whether L.B. met the listing for autism spectrum disorder, and he based his no-longer-disabled determination primarily on finding that the record evidence did not show L.B.'s limitations resulting from his impairments were sufficiently severe. Butler has not argued that the June 2, 2022 report shows that L.B. experienced more extreme limitations on or before the ALJ issued his decision, and a review of the report does not so suggest. *See Moore*, 405 F.3d at 1211 ("[A]s Moore applied for SSI payments in April 15, 1998, her SSI appeal requires a showing of disability between that date and the date of the ALJ's decision, on February 23, 2001."); *Enix v. Comm'r of Soc. Sec.*, 461 F. App'x 861, 863 (11th Cir. 2012) (per curiam) (unpublished) ("The new evidence must relate to the period on or before the date of the administrative law judge's ('ALJ') decision. Evidence of deterioration of a previously-considered condition may subsequently entitle a claimant to benefit from a new application, but it is not probative of whether a person is disabled during the specific period under review." (citations omitted)). Accordingly, Butler has failed to

persuasively show that there is a reasonable possibility that the June 2, 2022 report would change the administrative result.

For these reasons, Butler's request to remand L.B.'s case under sentence six of § 405(g) is due to be **DENIED**.

## V.   *Conclusion*

In accordance with the foregoing analysis, it is **ORDERED** that Butler's request to remand L.B.'s case under sentence six of 42 U.S.C. § 405(g) is **DENIED**, and that the Commissioner's final decision finding L.B. no longer disabled as of as of February 1, 2020, is **AFFIRMED** under sentence four of § 405(g).

Judgment in accordance with this order shall hereafter be set out by separate document, in compliance with Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the **26th** day of **March 2024**.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**